FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Western Division

97 JUL 22 AM 9: 41

U.S. DISTRICT COURT
N.D. OF ALABAMA

Kitty Herron, )
    Plaintiff(s); )
     )
-vs.- )    No. CV 96-P-0107-W
     )
Seton Home Health Services, )
    Defendant(s). )

ENTERED

JUL 23 1997

**OPINION**

After consideration at the Court's June 27, 1997 Motion Docket and for the following reasons, the Defendant's Motion to Dismiss is hereby GRANTED IN PART and DENIED IN PART.

**Facts**[1]

The Plaintiff Kitty Herron ("Herron"), a black female, worked for the Defendant Seton Home Health Services ("Seton Home") as a home health aid. Her duties included providing in-home health care to patients located in different parts of Greene County. As part of her compensation, Herron was paid for her traveling time and for her mileage from the time she left her home in Gordo and arrived at the company's Greensboro office or her patients' homes which were located in Greene County. As part of a cost saving measure, Seton Home transferred Herron to their Gordo office to reduce the amount of mileage she was accruing. Herron objected to the move. After discussions with both the Gordo office and the Greensboro office, Herron volunteered to move her residence closer to the Greensboro office. Seton Home agreed to the new

---

[1]. The recitation of "facts" is based upon the presented materials viewed in the light most favorable to the Plaintiff.

arrangement and Herron retained her position in the Greensboro office. Two white male employees who worked in the Greensboro office but who lived in Tuscaloosa County voluntarily transferred to Seton Home's Tuscaloosa office.

During a training session, a nursing supervisor trainee, Vergie Corkerin, reviewed a daily visit report ("DVR") submitted by Herron. Corkerin noticed that Herron had listed a number of miles and an amount of time between visits to two patients that Corkerin thought to be inaccurate. Corkerin performed an audit of the DVR and found a discrepancy between the amount of time and mileage between the patients she recorded and that reported by Herron. Herron told Corkerin that the additional time could have been initiated by having to stop to return calls to the office or due to the fact that some of those patients on those days were not her patients and it had taken her extra time to find their houses. The matter was referred to Grover Wedgeworth, the branch manager. Herron was terminated for the stated reason that she falsified records in violation of Seton Home's policy and Medicare regulations.

Corkerin, a white female, was paid by her cousin to take care of her cousin's father-in-law, Ray Elliott, who was also living with Corkerin. Elliott was a Medicare patient and also a Seton Home patient. She included the time she spent caring for Elliott on her DVR's and received payment from Seton Home. Seton Home then billed Medicare for these services. Double payment for the same services violated Medicare regulations as well as Seton Home's policy. Corkerin knew that these actions violated Seton Home's policy and asked Herron and others not to report it to Seton Home's management. After Wedgeworth discovered Corkerin's activity, he discussed the matter with her but Corkerin was never reprimanded or disciplined in anyway. Both Wedgeworth and Jerry Doss, the regional manager, knew that these activities may have violated

Medicare regulations.

Herron filed this lawsuit alleging violations under Title VII and 42 U.S.C. § 1981 alleging racial discrimination in her discharge and in the terms and conditions of her employment as it relates to the involuntary transfer to the Gordo office.

## Analysis[2]

I. Terms and Conditions

Under Title VII and § 1981, a plaintiff must make a prima facie showing of racial discrimination. The plaintiff must show that (a) he is a member of a protected class (in this case a racial minority); (b) he was qualified for the position; (c) there was an adverse employment action or termination; (d) he was replaced by someone outside the protected class.[3] If the plaintiff makes a prima facie showing, burden shifts to the defendant to articulate a non-discriminatory reason for his actions.[4]

Herron alleges the involuntary transfer to Gordo was an adverse employment action which was motivated by racial discrimination. Herron argues that two white employees were allowed a voluntary transfer to offices closer to their homes in Tuscaloosa County.

Seton Home argues that it has articulated a non-discriminatory reason for transferring Herron. Seton Home's articulated reason for transferring Herron was to reduce overtime and

---

2. Although the Plaintiff's complaint makes reference to discrimination in wages, no evidence has been introduced on this issue and the Plaintiff has not argued the issue in her brief. The court assumes that the Plaintiff has abandoned this aspect of the claim as to the terms and conditions of her employment.

3. See, *McDonnell Douglas v. Green*, 411 U.S. 792 (1973); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993); *Hawkins v. Ceco Corp.*, 883 F.2d 977 (11th Cir. 1989).

4. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981).

3

mileage costs incurred because of the distance between her home and her patients. Under *Burdine*, if the Defendant has articulated a non-discriminatory reason for its action, the plaintiff must come forward with evidence that the stated reason is a pretext or "sham."[5] In this case, Herron has not offered substantial evidence that racial discrimination motivated her transfer. In fact, the transfer was aborted when Herron offered to move to Greene County so that she could remain in the Greensboro office. Although Herron's brief makes much of the difference between "voluntary" and "involuntary" transfers, the distinction does not create an inference that the reason Seton Home offers is a pretext. Simply because the two white employees preferred to transfer to offices closer to their residences and Herron did not prefer to do so does not mean that a reduction in mileage and overtime would not be anticipated. Based on the foregoing facts, the Defendant's Motion for Summary Judgment on the Plaintiff's claims of racial discrimination as to terms and conditions of employment is hereby GRANTED.

II. Discharge

Because Herron has produced substantial evidence that genuine issues of material fact remain as to the issue of her discharge, Seton Home's Motion for Summary Judgment on this issue is hereby DENIED.

### Conclusion

Based on the foregoing reasons, the Defendant's Motion is GRANTED IN PART and DENIED IN PART. The Motion is granted as to the Plaintiff's claims of racial discrimination in the terms and conditions of her employment. The Motion is denied as to the Plaintiff's claims

---

5. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981).

4

of racial discrimination in her discharge.

Date: July 22, 1997

Chief Judge Sam C. Pointer, Jr.

Service List:
    Mr. Samuel Fisher
    Ms. Amy W. Sinnott
    Mr. Lyman H. Harris
    Mr. Roger K. Quillen
    Mr. F. Kytle Frye, III
    Mr. Howard B. Jackson